UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kizito Kalema d/b/a
Gold Eagle Courier,

Civil No. 05-0323 (PAM/JSM)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

U.S. Oil Co., Inc. d/b/a
U.S. Tire & Exhaust,

Defendant.

---

This action involves two claims: a breach of contract claim and a discrimination claim under the Minnesota Human Rights Act ("MHRA"). Trial in this matter occurred on July 10 and 11, 2006. The parties tried the breach of contract claim to the jury and the discrimination claim to the Court. The jury returned a verdict in favor of Plaintiff Kitizo Kalema and awarded him $17,600 on the breach of contract claim. For the reasons that follow, the Court finds for Kalema on the discrimination claim as well.

**FACTS**

Plaintiff, a native of Uganda, is black. He owned and operated Gold Eagle Courier, a business that provided courier services. Defendant U.S. Oil Co., Inc. distributes automotive products, such as tires, shocks, and struts. It uses courier services to distribute automotive products throughout the Minneapolis-Saint Paul metropolitan area. Scott Clark, the operational manager of the U.S. Oil warehouse in New Brighton, Minnesota, was responsible for dispatching drivers for various deliveries.

From 1999 to 2002, Kalema worked as an independent contractor for U.S. Oil,

delivering goods between Saint Paul, Minnesota and River Falls, Wisconsin. In July 2002, Kalema and U.S. Oil entered into a contract whereby Gold Eagle Courier provided courier services for U.S. Oil in the Minneapolis-Saint Paul metropolitan area.

Kalema claims that Clark began discriminating against him and Gold Eagle Courier drivers in April 2003. At trial, Kalema offered several examples of alleged disparate treatment. First, Clark distributed work to drivers of non-minority-owned courier companies, even when Gold Eagle Courier drivers were ready and able to provide courier services. Second, Clark frequently asked Gold Eagle Courier drivers to punch out from courier services early, while other courier service drivers were allowed to remain. Third, Clark used Gold Eagle Courier drivers on routes that Kalema perceived as less desirable and profitable. Notwithstanding these actions, Kalema and Gold Eagle Courier drivers regularly worked forty hours a week.

In addition to the alleged disparate treatment, a former Gold Eagle Courier driver testified that Clark was "very cold" towards Kalema and treated him less favorably than other couriers. The former employee also testified that, throughout his employment with Gold Eagle Courier,[1] Clark regularly remarked that he did "not like black people." Specifically, Clark made the comments on a weekly or bi-weekly basis when discussing professional athletes. At trial, Clark qualified the comments by stating that he simply remarked about one, specific athlete whom he disliked because of alleged steroid use.

---

[1] The former employee worked for Gold Eagle Courier for a couple of years until U.S. Oil terminated Gold Eagle Courier in January 2004. Thereafter, the employee worked for another courier business which served U.S. Oil until November 2005, when U.S. Oil informed the courier that the employee could no longer deliver products for U.S. Oil.

In January 2004, U.S. Oil used two courier companies. It discovered that funds were missing and suspected that a courier driver had taken the money. Although U.S. Oil was unable to identify who took the funds or whether a Gold Eagle Courier driver was involved in the misappropriation, it terminated Gold Eagle Courier instead of the other courier company. Clark explained that U.S. Oil wanted to use only one courier so that it could determine where the problem lay. He further explained that U.S. Oil chose to continue working with the other courier company because that company employed over fifty couriers and could meet the demands of U.S. Oil.[2] Thereafter, several Gold Eagle Courier employees went to work for the competitor.

**DISCRIMINATION CLAIM**

> The MHRA provides:
>
> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service . . . to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's race [or] national origin, . . . unless the alleged refusal or discrimination is because of a legitimate business purpose.

Minn. Stat. § 363A.17(c). Kalema alleges that U.S. Oil violated the MHRA by terminating its contract with Gold Eagle Courier because Gold Eagle Courier is a minority-owned business.

To establish a discrimination claim under the MHRA, Kalema must prove intentional discrimination. See Minn. Stat. § 363A.17(c); Gold Star Taxi & Transp. Serv. v. Mall of Am. Co., 987 F. Supp. 741, 745 (D. Minn. 1997) (Magnuson, J.). He may prove discriminatory intent either through direct evidence or through circumstantial evidence in accordance with the

---

[2] Gold Eagle Courier had only three couriers at the time, and U.S. Oil required eight to ten couriers a day.

tripartite framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gold Star Taxi & Transp. Serv., 987 F. Supp. at 745; Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 542 (Minn. 2001).

**A.  Direct Evidence**

Direct evidence is evidence that shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact-finder that an illegitimate criterion actually motivated" the adverse action. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)); see also Canday v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1034 (8th Cir. 2006) (direct evidence is evidence "sufficient to permit the fact-finder to find that the discriminatory attitude was more likely than not a motivating factor in the employment decision"). However, not all comments that may reflect a discriminatory animus are sufficiently related to the adverse action to support such an inference. Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999). In differentiating between direct and indirect evidence of age discrimination, courts distinguish comments that demonstrate a discriminatory animus in the decisional process from stray remarks in the workplace, statements by non-decision makers, or statements by decision makers unrelated to the decisional process. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1157 (8th Cir. 1999) (citation omitted). The Court looks beyond the moment a decision was made to determine whether the statement played a role in the ultimate decision-making process. Gagnon v. Sprint Corp., 284 F.3d 839, 848 (8th Cir. 2002).

Clark, the individual who ultimately terminated Gold Eagle Courier, remarked that he

"did not like black people."[3]  However, Clark made the remark outside of the decision-making process, and Kalema presents no link between the comment and the termination decision. Accordingly, the remark is not direct evidence of race discrimination.  See Walton, 167 F.3d at 427; see also Simmons v. Océ-USA, Inc., 174 F.3d 913, 916 (8th Cir. 1999) (to establish direct evidence of discrimination, plaintiff must show a causal link between the derogatory comments and adverse decision).

**B.   Indirect Evidence**

Because Kalema has not presented direct evidence of discrimination, McDonnell Douglas applies. See Baucom v. Holiday Cos., 428 F.3d 764, 766 (8th Cir. 2005). Under the McDonnell Douglas paradigm, a plaintiff must first establish a prima facie case of discrimination. Id.  If the plaintiff does so, the burden shifts to the defendant to proffer a legitimate, non-discriminatory explanation for its conduct. Id.  If the defendant meets this burden, the presumption of discrimination disappears, and the burden reverts to the plaintiff to establish that the defendant's proffered reason was a pretext for discrimination. Id.  The plaintiff always bears the ultimate burden of proving that intentional discrimination occurred. Mayer v. Nextel West Corp., 318 F.3d 803, 807-08 (8th Cir. 2003).

  1.   Prima Facie Case

To establish a prima facie case of discrimination, Kalema must show that: (1) he is a member of a protected class; (2) he and/or Gold Eagle Courier drivers were qualified to

---

[3] The Court notes that the former employee, who has no stake in this litigation, was credible in his account of Clark's comments and how Clark treated Kalema.

perform the work required by U.S. Oil; (3) despite their qualifications, U.S. Oil denied them the opportunity to contract for the work; and (4) after the denial, U.S. Oil allowed individuals outside of the protected class to do the same work. Gold Star Taxi & Transp. Serv., 987 F. Supp. at 747.

Kalema has established a prima facie case of discrimination. First, as a minority business owner, Kalema is a protected class member. Second, Kalema and his employees were qualified to perform courier services for U.S. Oil. Indeed, no performance issues ever arose relating to Gold Eagle Courier drivers.[4] Third, U.S. Oil denied Gold Eagle Courier the opportunity to work for U.S. Oil by terminating the business relationship in January 2004. Fourth, U.S. Oil allowed a non-minority-owned company to continue providing courier service for U.S. Oil after January 2004.

  2. Legitimate, Non-Discriminatory Reason

U.S. Oil articulated a legitimate business reason for terminating the Gold Eagle Courier contract. In particular, U.S. Oil explained that it discovered funds missing in December 2003. It determined that one of the courier drivers was to blame, although it could not determine which driver was responsible. At that time, U.S. Oil used two courier services. To lessen the risk of further misappropriation, U.S. Oil decided to use only one courier. U.S. Oil opted to use the non-minority-owned courier company, which was large enough to ensure that U.S. Oil would have a sufficient number of couriers at all times.

---

[4] The contract between Gold Eagle Courier and U.S. Oil required U.S. Oil to notify Kalema of any problems and allow Kalema to cure any defects. U.S. Oil never notified Kalema of any performance issues.

6

3.      Pretext

Because U.S. Oil proffered a non-discriminatory reason for its termination of the Gold Eagle Courier, the case turns on whether Kalema has shown that the proffered reason was a pretext for unlawful discrimination. To show pretext, a plaintiff cannot simply show that the decision was wrong or mistaken. An employer may make "decisions based on poor job performance, erroneous evaluations, personal conflicts . . . , or even unsound business practices," as long as these decisions are not motivated by unlawful discrimination. Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 959 (8th Cir. 2001) (citation omitted). Rather, a plaintiff must show that the decision was motivated by unlawful discrimination.

Kalema has presented sufficient evidence to cast doubt on the reason asserted by U.S. Oil. U.S. Oil decided to terminate only Gold Eagle Courier despite merely general suspicions of missing funds. U.S. Oil had no performance issues with Gold Eagle Courier, and admitted that it was satisfied with the services provided. Most compelling is that after U.S. Oil terminated Gold Eagle Courier, former Gold Eagle Courier drivers went to work for companies that served U.S. Oil, without objection by U.S. Oil. This evidence undermines the proffered reason that U.S. Oil terminated Gold Eagle Courier because it suspected Gold Eagle Courier drivers of misappropriating U.S. Oil funds.

In addition, the record contains evidence indicating that race was a determinative factor in U.S. Oil's decision to terminate Gold Eagle Courier. First, Kalema presented several examples of how Gold Eagle Courier drivers were treated differently than other courier companies. In particular, Gold Eagle Courier drivers were forced to stand by and wait while drivers from other courier companies were given jobs, and were required to punch out while

7

others were allowed to remain on the clock. Second, the Court relies heavily on evidence that Clark, the manager who made the termination decision, remarked that he did not like black people, and that he treated Kalema less favorably than other couriers. "Although . . . stray remarks, standing alone, may not give rise to an inference of discrimination, such remarks are not irrelevant." Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 922 (8th Cir. 2000) (citation omitted). Rather, such comments are "surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, thus providing additional threads of evidence that are relevant" to the ultimate issue of whether U.S. Oil intentionally discriminated. Id. (citation omitted); see also Bevan v. Honeywell, Inc., 118 F.3d 603, 610-11 (8th Cir. 1997) (statements of a decision maker that are unrelated to the adverse decision are nevertheless relevant when considered with other evidence of pretext); Madel v. FCI Marketing, Inc., 116 F.3d 1247, 1252 (8th Cir. 1997) (same). Moreover, this is not a case where the decision maker made an isolated remark that was remote in time from the decision-making process. The record reflects that Clark regularly remarked about his dislike for black people. His remarks constitute circumstantial evidence, that when considered together with other evidence, creates an inference of intentional discrimination. See Fisher, 225 F.3d at 922 (remarks, which were highly indicative of discriminatory motive and were repeatedly made by individuals who influenced the decision-making process, were sufficient to give rise to an inference of discrimination). These facts create a reasonable inference that U.S. Oil terminated its relationship with Gold Eagle Courier because Gold Eagle Courier was a minority-owned business. Accordingly, the Court finds in favor of Kalema on the MHRA claim.

**C.     Damages**

Kalema asks the Court to award treble damages, punitive damages, and damages for mental anguish. The MHRA permits an award of compensatory damages "in an amount up to three times the actual damages" sustained; up to $8,500 in punitive damages; damages for mental anguish; and reasonable attorneys' fees. See Minn. Stat. §§ 363A.29, 363A.33, 549.20. "Such awards are not required, however, and the Court has discretion to determine whether additional damages should be awarded." Ryther v. KARE 11, 864 F. Supp. 1525, 1529 (D. Minn. 1994) (Doty, J.).

1. Compensatory Damages

The jury previously awarded Kalema $17,600 on the breach of contract claim. Recognizing that he cannot receive double recovery, he asks that the Court award him the difference between what the jury awarded and what he sought for the breach of contract. That difference equals $7,400. In addition, Kalema also asks that the Court double or treble that award.

The compensation awarded by the jury adequately compensates Kalema for the termination of the business relationship. Accordingly, the Court declines to award Kalema additional compensatory damages. See Evans v. Ford Motor Co., 768 F. Supp. 1318, 1327 (D. Minn. 1991) (Murphy, J.) (refusing to multiply compensatory damage award because plaintiff was adequately compensated by other award).

2. Punitive Damages

Kalema seeks an award of $8,500 in punitive damages. Punitive damages are allowed where there is clear and convincing evidence that the defendant acted with deliberate disregard for the rights of the plaintiff. See Minn. Stat. § 549.20. Courts consider factors such as the

9

duration of the misconduct, any concealment of it, and the attitude and conduct of the defendant upon discovery of the misconduct. See Evans, 768 F. Supp. at 1327 (citation omitted). In addition, a plaintiff must show that he "personally suffered from the alleged wrongful conduct to be awarded punitive damages." Carter v. Kansas City So. Railway Co., Nos. 05-2220 & 05-2429, slip op. at 8 (8th Cir. Aug. 4, 2006) (citing Williams v. ConAgra Poultry Co., 378 F.3d 790, 797 (8th Cir. 2004)).

Although evidence at trial showed that Clark repeatedly expressed dislike for black individuals, Kalema presented no evidence that anyone else at U.S. Oil was aware of the comments. Indeed, the evidence showed that U.S. Oil never received any complaints about Clark exhibiting racial animus. Moreover, Kalema presented no evidence that he was aware of the comments. Accordingly, Kalema failed to meet the high burden of showing that U.S. Oil deliberately disregarded his rights. Punitive damages are therefore inappropriate.

### 3. Mental Anguish and Suffering

Kalema seeks damages for mental anguish and suffering caused by U.S. Oil's discriminatory conduct. To recover for mental anguish under the MHRA, a plaintiff need not show that the pain and suffering were severe or accompanied by physical injury. Ryther, 864 F. Supp. at 1529. Rather, it may be based on subjective testimony. Id.

Kalema testified that he suffered substantial emotional distress after U.S. Oil terminated the business relationship. He explained that his distress was so severe that he was essentially dysfunctional for five months. Although he did not seek medical treatment, he talked extensively with two religious counselors, and his wife testified that he was severely distraught. Based on this evidence, the Court finds that an award of $5,000 for mental anguish

is appropriate.

    4.    <u>Attorneys' Fees</u>

Kalema seeks an award of attorneys' fees. The Court may award reasonable attorneys' fees to a prevailing plaintiff. A prevailing plaintiff is defined as a party who succeeds "on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." <u>Id.</u> at 1532 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)). The Court finds that Kalema is entitled to recover reasonable attorneys' fees in prosecuting this action.

**CONCLUSION**

Kalema has successfully demonstrated that U.S. Oil unlawfully discriminated against him and Gold Eagle Courier. The Court therefore finds in favor of Kalema on the discrimination claim. Although compensatory and punitive damages are inappropriate, Kalema is entitled to an award for the emotional distress he suffered, as well as reasonable attorneys' fees. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Judgment on Count II of the Complaint be entered in favor of Plaintiff;

2. Defendant shall pay Plaintiff $5,000 for emotional distress damages;

3. Defendant shall pay Plaintiff for reasonable attorneys' fees incurred in this action; and

4. By August 25, 2006, Plaintiff shall submit a detailed affidavit to the Court itemizing fees incurred in this action.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 8, 2006

                                                 s/ Paul A. Magnuson
                                                 Paul A. Magnuson
                                                 United States District Court Judge